IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| **Dedric Powell**, | : |
| *Plaintiff*, | : Case No. 1:22-cv-496 |
| v. | : Judge Jeffery P. Hopkins |
| **CBRE, Inc.**, | : |
| *Defendant*. | : |

## OPINION AND ORDER

This matter is before the Court on the Motion to Dismiss Plaintiff's Complaint filed by Defendant CBRE, Inc. ("CBRE"). Doc. 6. Plaintiff Dedric Powell ("Powell" or "Plaintiff") alleges that CBRE is liable for breach of contract and related torts predicated on its wrongfully withdrawing an offer of employment after he had accepted it. Doc. 2, PageID 43. CBRE moves to dismiss for failure to state a claim upon which relief can be granted by arguing mainly that it had the right to rescind an at-will employment offer at any time and for any reason. Doc. 6, PageID 76. Powell filed a Memorandum in Opposition, to which CBRE filed a Reply. Doc. 7, 8. For the reasons set forth below, the Court will **GRANT in part and DENY in part** the Motion to Dismiss Plaintiff's Complaint.

**I.    BACKGROUND**

    **A.    Factual Allegations**

CBRE is a commercial real estate services and investment firm that conducts business in Hamilton County, Ohio. Doc. 2, PageID 38. Dedric Powell is a resident of Hamilton County, Ohio and a former employee of CBRE. *Id*. at PageID 41. On July 20, 2021, CBRE

made a written offer of employment to Powell. *Id.* at PageID 38. The offer letter expressly stated that it "serve[d] to confirm the full and complete terms of [CBRE's] employment offer and supersede[d] any prior discussions or agreements." *Id.* at PageID 49. The offer letter provided an estimated start date of August 1, 2021 for Powell and stated that Powell would work in Cincinnati, Ohio and report to Senior Managing Director Samuel Sockwell. *Id.* The offer letter also stated that the "offer and [Powell's] continued employment are contingent upon satisfactory results of a background check at the company's expense." *Id.* at PageID 50.

Of final significance, the offer letter specified terms of compensation, including payment of a $285,000 annual salary, consideration for an equity grant of $75,000 in the year 2022, and eligibility for a discretionary bonus in the target range of $450,000 to $900,000. *Id.* at PageID 49. A "Signing Incentive" provision included in the offer letter stated that:

> In addition to the compensation in the preceding paragraphs, you will be paid a one-time only Signing Incentive of $600,000.00, payable and earned on the following terms and conditions. On or before the thirtieth (30th) day after the Effective Date, CBRE will advance to you a sum equal to the Signing Incentive ("Advance"). The Advance shall be subject to normal tax withholdings as required by law. Should you terminate your employment voluntarily prior to five years of service, you will not have earned the Signing Incentive and you agree to repay to CBRE the full amount of the Advance. You will have earned the Signing Incentive if you remain an employee of CBRE for five years after the Effective Date. In the event that your employment or association with CBRE is terminated within five years from the Effective Date: (A) by CBRE for other than "Cause" (as defined in CBRE's Severance Plan), or (B) due to your death or "Permanent Disability" (as defined by the ADA), you will have no further obligation to repay the Signing Incentive. In the event your employment or association with CBRE is terminated within five years from the Effective Date by CBRE for Cause, you will repay to CBRE the full amount of the Advance.

*Id.* The term "Effective Date" was neither defined nor used elsewhere in the offer letter. Finally, the offer letter stated that "CBRE is an 'at will' employer which means that either you or CBRE may terminate the employment agreement at any time with or without notice

2

or cause." *Id.* at PageID 51.[1]

On July 27, 2024, CBRE set the official start date for Powell as August 24, 2021. *Id.* at PageID 53. On July 28, 2021, Powell received an email about the background screening process, and he asked Sockwell whether there was anything he needed to do. *Id.* at PageID 54. Sockwell responded, "Nothing you need to do." *Id.* Later that day, Powell emailed Sockwell that he had informed his current employer, JLL, that he was leaving that company to work for CBRE. *Id.* at PageID 56.

The next day, on July 29, 2021, Powell received an email from the CBRE Talent Acquisition account stating that he had "successfully cleared the background screening process" and that he would be contacted by a member of the hiring team "with information about [his] first day of employment." *Id.* at PageID 57–58. According to Powell, at the outset of the negotiations surrounding his possible reemployment with CBRE, he fully discussed

---

[1] The employment contract also contained a "Mutual Arbitration" provision that stated in part:

> In the event of any dispute, claim, or controversy that could otherwise be raised in court ("Claims") between you and the Company (including allot its current or former officers; directors; members; employees; vendors; clients; agents; parent, subsidiary, and affiliated entities; benefit plans; benefit plans' sponsors; fiduciaries; administrators; and all successors and assigns of any of them), we jointly agree to submit all such Claims to binding arbitration and waive any right to a jury trial in court. The Claims subject to arbitration include all claims arising from or related to your employment or the termination of your employment including, but not limited to, claims for wages or other compensation due; claims for breach of any contract or covenant (express or implied); tort claims . . .
>
> * * *
>
> The arbitration (i) shall be conducted pursuant to the JAMS Employment Arbitration Rules & Procedures to the extent they do not conflict with this provision, which are incorporated by reference and may be accessed at https://www.jamsadr.com or by calling JAMS at (800) 352-5267; (ii) shall be heard before a retired State or Federal judge in the county containing the CBRE office in which you were last employed, unless the parties agree otherwise; and (iii) must be initiated within the time period required under the applicable statute of limitations. Each party shall have the right to conduct discovery adequate to fully and fairly present the claims and defenses consistent with the streamlined nature of arbitration.

*Id.* at PageID 50–51. Neither party has sought to enforce this arbitration provision.

with Sockwell all the circumstances concerning his prior employment with the company before he received the current employment offer. *Id.* at PageID 41. He also received an email from Julie Smith, CBRE's Business Partner Director, about Human Resources matters on August 17, 2021, in which she acknowledged his "return to CBRE." *Id.* at PageID 59.

Despite receiving all of these seemingly positive overtures from CBRE, Powell received a letter dated to August 20, 2021 in which Sockwell notified him that CBRE was withdrawing what it characterized as a "conditional offer made to [him] for employment … based on material omissions from [Powell] related to [his] employment history with CBRE." *Id.* at PageID 61. For his part, Powell denies that he made any material omissions related to his prior CBRE employment. *Id.* at PageID 42. He also asserts that CBRE's own business records contained his employment history with the company. *Id.* Powell asserts that he had fulfilled all his previous contractual obligations with CBRE and was ready to begin employment with the company on the start date identified in the offer letter. *Id.* He further alleges that CBRE refused to let him start employment on the agreed-upon start date, or August 24, 2021, and refused to pay him the amounts owed under the contract. *Id.* at PageID 43, 53.

B. **Procedural History**

Frustrated by the withdrawal of the employment offer, Powell sued CBRE in the Hamilton County, Ohio Court of Common Pleas on July 21, 2022. Doc. 1. He asserted five claims in the Complaint: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) promissory estoppel; (4) conversion; and (5) civil theft. Doc. 2, PageID 43–46. In turn, CBRE removed the case to federal court on August 24, 2022. Doc. 1. CBRE then filed this Motion to Dismiss. Doc. 6. The motion is fully briefed and ripe for adjudication.

## II. STANDARD OF REVIEW

CBRE seeks an order dismissing the Complaint under Rule 12(b)(6). A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted" under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must include "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). This, however, requires "more than labels and conclusions [or] a formulaic recitation of the elements of a cause of action," and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 555. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable interference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). Indeed, under the plausibility standard set forth in *Twombly* and *Iqbal*, courts play an important gatekeeper role, ensuring that claims meet a plausibility threshold before defendants are subjected to the potential rigors and, very often, the disruptive and elevated costs of the discovery process. "Discovery, after all, is not designed as a method by which a plaintiff discovers whether he has a claim, but rather a process for discovering evidence to substantiate plausibly-stated claims." *Green v. Mason*, 504 F. Supp. 3d 813, 827 (S.D. Ohio 2020).

In deciding a motion to dismiss, the district court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). In doing so, the district court "need not accept as true legal conclusions or unwarranted

factual inferences." *Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000). On a Rule 12(b)(6) motion, a district court "may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein, without converting the motion to one for summary judgment." *Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 681 (6th Cir. 2011) (cleaned up).

### III. LAW AND ANALYSIS

#### A. Breach of Contract Claim

Powell alleges in Count One of the Complaint that CBRE breached the employment contract stated in the offer letter. Doc. 2, PageID 43. CBRE moves to dismiss the claim, arguing that it had a right to withdraw an offer for at-will employment at any time and for any reason. Doc. 6, PageID 76. Setting aside the matter of the Signing Incentive for $600,000, the Court agrees with CBRE.

In Ohio "at-will employees may be terminated for any reason, or for no reason whatsoever." *Zwiebel v. R.J. Corman R.R. Co./Material Sales*, No. 3:11-cv-00236, 2013 WL 444348, at *4 (N.D. Ohio Feb. 4, 2013) (citing *Mers v. Dispatch Printing Co.,* 19 Ohio St.3d 100, 483 (1985)). A breach of contract claim generally cannot be proven for an offer of at-will employment unless the defendant company offered the plaintiff a specific duration of employment. *Id.*; *see also Godfrey v. Mastec, Inc.*, No. 1:15-CV-409, 2015 WL 7570209, at *4 (S.D. Ohio Nov. 25, 2015) ("Ohio appellate courts considering breach of contract claims based upon an offer letter indicating at-will employment, have found that an indication of the duration of the expected employment is necessary."); *Clark v. Collins Bus Corp.*, 2000-Ohio-1640 (3rd Dist.) (affirming summary judgment for employer who withdrew offer of

employment for indefinite duration). Although CBRE did tender an offer letter to Powell with an estimated start date, the start date was qualified to be "pending," and Powell's offer of employment was not for any specific duration. As such, Powell fails to state a cognizable claim under Ohio law for breach of an employment contract.

The analysis differs, however, relative to the Signing Incentive provided for in the offer letter. The Signing Incentive provision stated that CBRE would pay a $600,000 Advance of the Signing Incentive to Powell on or before the thirtieth day after the Effective Date. Doc. 2, PageID 49. As noted, the Effective Date is undefined in the offer letter. Powell alleges that the offer letter converted the provisions of the letter pertaining to the Signing Incentive into an enforceable contract when Powell satisfied the contingency of passing the background check on July 29, 2021. Doc. 2, PageID 43, 50, 57–58. With respect to this portion of the argument, CBRE does not dispute that the offer letter converted into a contract for purposes of the Motion to Dismiss. Doc. 8, PageID 106. Under the terms of the offer letter, Powell did not need to be employed for any length of time to qualify to keep the $600,000 Advance of the Signing Incentive. Although Powell would have had to pay back the $600,000 if he *voluntarily* terminated his employment within five years of the Effective Date, he had no duty to repay the $600,000 if his "employment or association with CBRE is terminated within five years of the Effective Date . . . by CBRE for other than 'Cause.'" Doc. 2, PageID 49. Under the circumstances, Powell has plausibly alleged that CBRE, without justification, refused to permit him to begin his employment on his start date. *Id.* at PageID 43. This is sufficient to plead that CBRE ended their association without cause, and therefore, Powell has stated a plausible breach of contract claim to recover the $600,000 Signing Incentive. Accordingly, the

Court will dismiss the breach of contract claim in part, with the exception of the Signing Incentive portion of that claim which will survive.

B. **Breach of Covenant of Good Faith and Fair Dealing**

In Count Two of the Complaint, Powell alleges that CBRE breached the covenant of good faith and fair dealing impliedly stated in his employment contract. Doc. 2, PageID 44. The Supreme Court of Ohio has held that "there is no independent cause of action for breach of the implied duty of good faith and fair dealing apart from a breach of the underlying contract." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 44; *see also Mares v. Miami Valley Hosp.*, 96 F.4th 945, 956 (6th Cir. 2024) (quoting *Lucarell*). As such, the covenant of good faith and fair dealing claim fails as a matter of law to the extent that the breach of contract claim fails. Moreover, "Ohio law does not recognize a good faith and fair dealing requirement in employment-at-will relationships." *Clark*, 736 N.E.2d at 973; *see also Schoenberg v. Fifth Third Bank*, No. 1:07-CV-276, 2008 WL 4758674, at *7 (S.D. Ohio Oct. 28, 2008) (stating that the implied covenant of good faith and fair dealing is not imposed on an at-will relationship); *Ziegler v. Findlay Indus., Inc.*, 464 F. Supp. 2d 733, 741 n.4 (N.D. Ohio 2006) (stating that no cause of action for breach of this covenant exists for at-will employment contracts).

In arguing that the breach of the covenant of good faith and fair dealing survives, Powell relies on one Ohio appellate case in which the court stated that "the standard of good faith is required of every contract, including employment contracts." *Littlejohn v. Parrish*, 2005-Ohio-4850, ¶ 22 (1st Dist.) (citing *Brown v. Otto C. Epp Mem. Hosp.*, 41 Ohio App.3d 198, 199 (1st Dist. 1987)). *Littlejohn* concerned the breach of a mortgage note, not an employment contract, so it is of limited precedential value from the start. *Id.* at ¶ 8. Moreover, the court in *Littlejohn* clarified that, despite its statement that good faith is required in employment

8

contracts, it did "not in any way mean to suggest that Ohio's strong public policy of employment at will is subject to good faith." *Id*. at ¶ 23. The court stated that only a contract for a term of employment, which does not exist here, would be subject to good faith. *Id*. *Littlejohn* does not support a finding that a separate claim exists for breach of the covenant of good faith and fair dealing in at-will employment contracts. Thus, the Court dismisses Powell's claim for breach of the covenant of good faith and fair dealing.

    C.    **Promissory Estoppel**

Powell asserts in Count Three that CBRE "made a clear and unambiguous promise of employment and payments" to him. Doc. 2, PageID 45. Ohio law recognizes a promissory estoppel exception to the doctrine of employment at-will. *Mers*, 19 Ohio St. 3d at 104. "An at-will employee may recover under a promissory estoppel claim when (1) the employer made a representation of continued employment that could be deemed a promise; (2) the employee relied upon the promise; (3) that reliance was reasonable and foreseeable; and (4) the employee was injured as a result of his reliance." *Schoenberg*, 2008 WL 4758674, at *5 (internal quotation and citation omitted). As to the first prong, there must be a "specific promise of continued employment." *Id.*; *see also Wing v. Anchor Media, Ltd. of Texas*, 59 Ohio St.3d 108 (1991) (paragraph two of the syllabus). The promise of continued employment must be "clear and unambiguous." *Koval v. Dow Jones & Co.*, 86 F. App'x 61, 72 (6th Cir. 2004). The specific promise of continued employment is "of paramount importance" in cases where an employment offer is withdrawn. *Godfrey v. Mastec, Inc.*, No. 1:15-cv-409, 2015 WL 7570209, at *3 (S.D. Ohio Nov. 25, 2015). "[A] promise of future benefits or opportunities" alone will not suffice. *Clark*, 736 N.E.2d at 974.

One Ohio appeals court arguably recognized a claim for promissory estoppel by an at-will employee where the promise of continued employment was not clear and unambiguous. *See Trehar v. Brightway Ctr., Inc.*, 2015-Ohio-4144, ¶ 36 (7th Dist.). In *Trehar*, the plaintiff, an employee at-will for a "Christian organization," was terminated after she moved in with her boyfriend. *Id.* at ¶ 6. Thereafter, Trehar sued for promissory estoppel, alleging that her boss, the company president and CEO, had represented to her on several occasions that she would not be fired for cohabitating with her boyfriend when the two discussed Trehar's living situation. *Id.* at ¶ 14. Indeed, Trehar asserted that her CEO had congratulated her on the move and had excused her from a work function when she and her boyfriend sought to move into their new home. *Id.* The CEO had also testified that the employees were to rely on his statements and promises, which only confirmed the extent of Trehar's reliance on the CEO's representations and lack of objection. *Id.* at ¶ 36. The state court of appeals ultimately held that the company was not entitled to summary judgment on Trehar's promissory estoppel claim even though her employment was otherwise at-will. *Id*. In so holding, the *Trehar* court stated "[i]n construing the evidence in Trehar's favor, reasonable people could conclude that Trehar's boss and the president of the company induced Trehar to believe that no adverse employment action would result from her move. Thus, Trehar's promissory estoppel claim should have survived summary judgment." *Id*.

Here, Powell does not identify any specific promise or promises for continued employment in the Complaint, apart from the general offer of employment and the scheduled payments (aside from the Signing Incentive) contained in the offer letter as of the undefined Effective Date. Despite this deficiency, Powell argues that his facts are analogous to those in *Trehar*. Doc. 7, PageID 95. Although the argument is confusing and the analogy sought to be

10

drawn tenuous, at best, Powell seems to now assert that two CBRE officers, Sockwell and Smith, acknowledged that he had previously been employed by CBRE and that their affirmative acknowledgement provided CBRE with notice of this fact, which, in turn, would not permit CBRE to claim to terminate Powell for his "omissions" regarding his previous employment history with the company. Doc. 2, PageID 41–42; Doc. 7, PageID 95–96. The Court, however, does not agree with his analysis.

Powell's conversations with Sockwell cannot provide the basis for a promissory estoppel claim because they occurred *before* Powell received the written offer letter. Powell asserts that he disclosed the full circumstances of his prior CBRE work history to Sockwell "at the outset of their discussions regarding possible reemployment." Doc. 2, PageID 41. The offer letter, dated to July 20, 2021, specifically stated that it "serves to confirm the full and complete terms of [the] employment offer and *supersedes any prior discussions or agreements*." *Id.* at PageID 49 (emphasis added). Powell's offer was for *new* at-will employment. *Id.* at PageID 51. Even if, during their initial conversations, Sockwell had promised Powell reemployment despite the circumstances which ended his prior CBRE employment, that promise would have been superseded by the final offer letter, which authorized the termination of the employment agreement "at any time with or without notice or cause" and that further stated it "supersedes any *prior discussions* or agreements." *Id.* (emphasis added). These facts clearly distinguish the present case from *Trehar* and defeat any claim for promissory estoppel based on Powell's initial conversations with Sockwell. In *Trehar*, the CEO allegedly made implicit promises that *modified* the employee's already existing employment-at-will relationship. *Trehar*, 2015 WL 9349761 at *6. Here, any promise of future employment made to Powell by CBRE was effectively *superseded*, not modified, by the offer letter.

11

Similarly, the August 17, 2021 email from Smith does not support a promissory estoppel claim. Smith merely thanked Powell "for taking the time to meet with [her] . . . to discuss [his] return to CBRE and the associated HR related matters." Doc. 2, PageID 59. Smith did not make a clear and unambiguous promise to Powell of reemployment at CBRE despite the circumstances of his prior employment; rather, Smith merely acknowledged Powell's "return to CBRE." *Id*. Even if it could somehow be argued that Smith's email statement did constitute a clear and ambiguous promise of reemployment, Powell has not alleged that he took any actions in reliance upon this specific statement from Smith. Powell had already told his current employer on July 28, 2021—nearly three weeks prior—that he was leaving JLL to take a position at CBRE. *Id.* at PageID 40, 56. In fact, Powell does not allege at all in the Complaint that he took any actions in reliance between August 17, 2021, when he received Smith's email, and August 20, 2021, when CBRE withdrew the at-will employment offer. *Id.* at PageID 42. Therefore, Powell has not stated a claim that he was injured in reliance upon Smith's statement. The Court will therefore dismiss the promissory estoppel claim.

### D. Conversion

In Count Four of the Complaint, Powell alleges generally that CBRE "wrongfully exercised dominion or control over property in exclusion of [his] right." Doc. 2, PageID 45. "[T]he elements of conversion are: (1) plaintiff's ownership or right to possession of the property at the time of the conversion; (2) defendant's conversion by a wrongful act or disposition of plaintiff's property rights; and (3) damages." *Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 700 (S.D. Ohio 2012). Money is generally considered intangible property that cannot be subject to conversion unless "specifically identified monies are at

12

issue." *Id.*; *see also Farris v. U.S. Fin. Life Ins. Co.*, No. 1:17-CV-417, 2018 WL 2088284, at *4 (S.D. Ohio May 4, 2018) (stating that "money cannot be converted unless it is identifiable and there is an obligation to deliver the specific money in question.") To be identifiable, money must be earmarked, sequestered, or physically set aside. *Farris*, 2018 WL 2088284, at *4. An allegation that a "sum certain" is owed is different from an allegation that segregated, identifiable money has been converted. *Gascho*, 863 F. Supp. 2d at 700.

Powell has alleged at most here that sums certain—the contract amounts—are owed. He alleges that CBRE has "refused to pay [him] any *amounts owed* under the contract." Doc. 2, PageID 43 (emphasis added). He lists the compensation owed under the offer letter for a salary, an annual bonus, the Signing Incentive, and an equity grant. *Id.* at PageID 39. He does not allege in the Complaint that CBRE had a duty to or did segregate or set aside these sums allegedly owed to him. As such, he has not stated a claim for conversion. *Highman v. Gulfport Energy Corp.*, No. 2:20-CV-1056, 2020 WL 6204344, at *4 (S.D. Ohio Oct. 22, 2020) ("An obligation to merely make good a certain *sum* of money cannot form the basis of a conversion claim.").

Moreover, "[a] conversion claim cannot be based upon property rights that arise entirely from contractual rights." *Highman*, 2020 WL 6204344, at *4; *see also Williamson v. Recovery Ltd. P'ship*, No. 2:06-CV-292, 2011 WL 2181813, at *18 (S.D. Ohio June 3, 2011), *aff'd,* 731 F.3d 608 (6th Cir. 2013) ("[C]laims for conversion cannot ordinarily be predicated on a refusal to pay funds owed under a contract."). A conversion claim is not an alternative claim to breach of contract. *Highman*, 2020 WL 6204344, at *4. Rather, a plaintiff pleading conversion must plead the breach of a duty separate from that created by the contract. *Id.* Powell has only pled in the Complaint that CBRE "refused to pay [him] any amounts owed

13

under the contract." Doc. 2, PageID 43. Likewise, in his Memorandum in Opposition, Powell asserts that CBRE wrongfully withheld amounts owed to him and is required "to compensate [him] for the amounts owed under the contract." Doc.7, PageID 96. Powell purports to claim that an additional duty existed because the "conversion damages arising from the wrongful withholding are separate from the breach of contract damages themselves." *Id*. But the dispositive question here is not whether separate damages were incurred, but whether a separate duty exists. Powell has not identified any duty CBRE owed to him *other than* the alleged obligations in the offer letter. Powell has not pled the existence of a separate duty *other than* that allegedly created by the offer letter. Having found no such standalone duty beyond those enumerated in the offer letter, the Court will dismiss the conversion claim.

> E.  **Civil Theft**

In Count Five, Powell alleges that CBRE "has acted in bad faith and has wrongfully converted assets belonging to Mr. Powell, which [CBRE] knows belong to Mr. Powell" and that CBRE's actions "constitute[] grand theft, a Fourth Degree Felony in the state of Ohio under Ohio Revised Code § 2913.02(B)(2)." Doc. 2, PageID 46.[2] Again, the only property or

---

[2] The criminal statute provides:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> (1) Without the consent of the owner or person authorized to give consent;
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> * * *
>
> (B)(1) Whoever violates this section is guilty of theft.

assets which Powell conceivably refers to in the Complaint are the compensation terms set forth in the letter offer. Doc. 2, PageID 49. Powell clarifies in the Memorandum in Opposition that his claim is based on CBRE's "wrongful retention of at least $600,000," which is the amount of the Signing Incentive. Doc. 7, PageID 99. Ohio Revised Code § 2307.60(A)(1) "by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from any criminal act . . . unless a civil action 'is specifically excepted by law.'" *Jacobson v. Kaforey*, 2016-Ohio-8434, ¶ 7 (cleaned up).[3]

Powell's claim fails because Ohio courts have held that no civil action for theft exists if the theft is premised upon a breach of contract. *STE Invs., LLC v. Macprep, Ltd.*, 2022-Ohio-2614, ¶ 25 (6th Dist.); *Wildcat Drilling, LLC v. Discovery Oil and Gas, LLC*, 2018-Ohio-4015, ¶

---

(2) Except as otherwise provided in this division or division (B)(3), (4), (5), (6), (7), (8), or (9) of this section, a violation of this section is misdemeanor theft, a misdemeanor of the first degree. If the value of the property or services stolen is one thousand dollars or more and is less than seven thousand five hundred dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree. If the value of the property or services stolen is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, a violation of this section is grand theft, a felony of the fourth degree. If the value of the property or services stolen is one hundred fifty thousand dollars or more and is less than seven hundred fifty thousand dollars, a violation of this section is aggravated theft, a felony of the third degree. If the value of the property or services is seven hundred fifty thousand dollars or more and is less than one million five hundred thousand dollars, a violation of this section is aggravated theft, a felony of the second degree. If the value of the property or services stolen is one million five hundred thousand dollars or more, a violation of this section is aggravated theft of one million five hundred thousand dollars or more, a felony of the first degree.

Ohio Rev. Code § 2913.02.

[3] Ohio Revised Code § 2307.60 provides in relevant part:

(A)(1) Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

Ohio Rev. Code Ann. § 2307.60.

41 (7th Dist.), *rev'd and remanded on other grounds,* 2020-Ohio-6821. This is consistent with the general law in Ohio that "the existence of a contract action generally excludes the opportunity to present the same case as a tort claim." *Pham Constr. & Co., LLC v. Tran*, 2024-Ohio-634, ¶ 34 (5th Dist). "A tort claim based upon the same actions as those upon which a claim of contract breach is based will exist independently of the contract action only if the breaching party also breaches a duty owed separately from that created by the contract, that is, a duty owed even if no contract existed." *Id.* (citation omitted). Powell does not identify any duty CBRE owed to pay him $600,000 other than the Signing Incentive provision in the offer letter. Because no separate claim for civil theft exists in Ohio when the alleged theft is based on a breach of contract, the Court will dismiss Powell's civil theft claim.

### IV. CONCLUSION

For the reasons stated, the Court **GRANTS IN PART** and **DENIES IN PART** the Motion to Dismiss Plaintiff's Complaint filed by Defendant CBRE, Inc. Doc. 6. The Motion to Dismiss is **DENIED** as to Powell's claim for breach of contract as to the Signing Incentive only. The Motion to Dismiss is **GRANTED WITH PREJUDICE** as to all other claims.

**IT IS SO ORDERED.**

December 9, 2024

Jeffery P. Hopkins
United States District Judge