**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

DEDRIC POWELL,

    *Plaintiff,*

v.

CBRE, INC.,

    *Defendant.*

:
:
:
:
:
:
:
:
:
:
:
:

Case No. 1:22-cv-496

Judge Jeffery P. Hopkins

---

**ORDER DENYING DISCOVERY-RELATED MOTIONS (Docs. 62, 68, 70)**

---

This case involves the alleged breach of an employment contract and suit to recover damages. Before the Court are three motions all filed by Plaintiff Dedric Powell ("Plaintiff" or "Powell") against Defendant CBRE, Inc. ("Defendant" or "CBRE"). They are: (1) Plaintiff's Motion to Strike the Affidavit of Kathryn Mejia ("Ms. Mejia") (Doc. 62); (2) Plaintiff's Motion to Exclude CBRE's Volume 5 Document Production (Doc. 68); and (3) Plaintiff's Motion for Sanctions (Doc. 70). CBRE filed Responses contesting all three motions (Docs. 81, 82, 83), to which Plaintiff in turn replied. Docs. 89, 91, 92. These matters are all now ripe for determination.

Having considered the parties' submissions and the record in this matter, and being fully advised in the premises, the Court **DENIES** Plaintiff's Motion to Strike the Affidavit of Kathryn Mejia (Doc. 62); **DENIES** Plaintiff's Motion to Exclude Defendant's Volume 5 Document Production (Doc. 68); and **DENIES** Plaintiff's Motion for Sanctions (Doc. 70).

1

## I.     BACKGROUND

In this action, Powell sued CBRE alleging that it breached an employment contract which would have resulted in his being rehired by CBRE, a company he had previously left, to work for one of its competitors. Compl., Doc. 2. Powell claims CBRE offered him a management position that included a signing bonus, that he accepted the position, and that CBRE then broke the agreement and refused to pay any amounts owed under the contract. *Id.* ¶¶ 15, 18, 27. After the Court dismissed most of the other claims averred in the Complaint, all that remains is a single claim seeking recovery of the signing bonus. Doc. 13.

In the pre-offer stages of Powell's 2021 hiring, CBRE contracted with Sterling Infosystems, Inc. ("Sterling")[1] to perform a background check, categorized as a "Standard No Drug (7)," which included a seven-year employment history search. Doc. 81, PageID 1572–73. During discovery, CBRE produced documents establishing that the check requested was to cover the past seven years of Powell's employment history. *Id.*

On July 15, 2025, Powell served a subpoena on Sterling seeking to obtain documents related to the background investigation the company performed. Doc. 34-1, PageID 211. Sterling produced responsive documents on August 25, 2025, but Powell did not forward that production to CBRE until eighteen days later, on September 12, 2025. Abeln Aff., Doc. 47-1, ¶¶ 5–6; Doc. 81, PageID 1572. Although Sterling's production included Powell's answers to the background check questionnaire, it did not include the questionnaire form itself or the email directing Powell to complete it—both of which instructed him to disclose his past seven years of employment. Abeln Aff., Doc. 47-1, ¶ 6.

---

[1]   The Court refers to CBRE's background screening vendor as "Sterling Infosystems, Inc." because that is the corporation's official legal name. The parties' references to "Sterling Talent Solutions" reflect the brand name under which Sterling Infosystems, Inc. conducts its background screening business. The Court understands these names to refer to the same entity and uses the corporate name for clarity.

After reviewing the forwarded production and discovering the missing documentation, Kathryn Mejia, CBRE's Head of U.S./Canada Preboarding Operations, contacted Sterling by email on September 16, 2025, seeking the questionnaire form. Mejia Aff., Doc. 54, PageID 538–39; Doc. 81, PageID 1573. Between September 16 and September 22, 2025, Ms. Mejia and Sterling employees exchanged emails regarding the background check process. *Id.* Sterling confirmed the "Standard No Drug (7)" categorization and provided screenshots of the questionnaire portal and the email Sterling sends to applicants, both confirming that applicants are asked to provide seven years of employment history. *Id.* Unsatisfied with those results, CBRE issued its own subpoena to Sterling on September 25, 2025, to obtain the specific documents sent to Powell. *Id.*

The parties' Rule 30(b)(6) dispute arose from this same backdrop. Powell timely deposed Sam Sockwell and Julie Smith, two of CBRE's disclosed witnesses. Doc. 70, PageID 1263. Powell states that CBRE resisted producing its employee-witnesses absent a subpoena, taking the position that none held a title sufficient to be compelled to appear for deposition by notice alone under Rule 30(b)(6), and that this then prompted concern on Powell's part that CBRE would later disclaim the testimony of Sockwell and Smith as non-binding on the company. *Id.* On that basis, Powell sent CBRE a draft Rule 30(b)(6) notice and asked whether CBRE would instead stipulate that the prior testimony was binding. *Id.* at PageID 1263–64. CBRE declined to so stipulate, and Powell thereafter filed his notice of deposition requiring CBRE to produce a manager, officer or director who could testify on behalf of the company. *Id.* at PageID 1264. CBRE, for its part, notes that at a July 30, 2025 status conference Powell had represented he did not intend to take depositions beyond three identified witnesses, and characterizes the September 19, 2025 draft notice—served eleven days before the close of

discovery, identifying twenty-five topics, and setting the deposition for the last day of discovery—as unexpected and, in several respects, vague, overbroad, duplicative, or otherwise improper. Doc. 44; Doc. 83, PageID 1627.

The parties attempted to resolve the dispute through email correspondence but reached no agreement. Doc. 70-2, PageID 1270–89. CBRE served written objections and proposed extending the discovery deadline to allow time for a properly scoped deposition; Powell declined and insisted CBRE produce a witness on all topics as noticed. Docs. 45, 46, 59. Neither party sought the Court's assistance before the deposition date. The deposition was convened by Zoom on September 30, 2025, and CBRE appeared through counsel and stated on the record that it would not produce a witness, citing the number of topics, the short notice, and the lack of agreement on scope and timing. Doc. 69-1, PageID 1214–16. CBRE did not seek or obtain a protective order.

On that same day—the discovery deadline (Doc. 17)—CBRE produced the Mejia-Sterling email exchange to Powell as its Production Volume 5 and supplemented its Rule 26(a) initial disclosures. Doc. 81, PageID 1573; Doc. 82, PageID 1604. In an accompanying email, CBRE's counsel noted two changes: the addition of Ms. Mejia as a witness, and the potential addition of a Sterling corporate representative to authenticate Sterling's subpoena production. CBRE also offered to make the employee involved available for deposition and to extend the discovery deadline to allow adequate examination of Ms. Mejia. Doc. 81, PageID 1602; Doc. 82, PageID 1604.

Three motions arise from this sequence. In his Motion for Rule 37 Sanctions (Doc. 70), Powell contends that CBRE failed to produce witnesses for the noticed Rule 30(b)(6) deposition and in another, his Motion to Strike the Affidavit of Kathryn Mejia (Doc. 62), that

4

CBRE untimely disclosed Ms. Mejia as a witness. In his Motion to Exclude (Doc. 68), Powell argues that CBRE's September 30, 2025 production should be excluded because the document was not included in CBRE's Rule 26(a) initial disclosures and because the "eleventh hour" timing of the production warrants exclusion. Doc. 68, PageID 1153–54. The Court addresses each motion separately.

## II.   APPLICABLE RULES

### A.  Rule 26(a): Required Disclosures

Federal Rule of Civil Procedure 26(a)(1)(A) imposes an affirmative duty upon all parties involved in a lawsuit to disclose certain information without having to await a formal discovery request from the opposing side. Specifically, the Rule requires each party to provide the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses. Fed. R. Civ. P. 26(a)(1)(A)(i). This obligation does not extend to witnesses whose testimony would be used solely for impeachment purposes. *Id.* The duty to disclose is a continuing one. The purpose of these early disclosures is to prevent unfair surprises at trial and to promote the just, speedy, and inexpensive resolution of disputes. *See* Fed. R. Civ. P. 1.

### B.  Rule 26(e): Supplementing Disclosures and Responses

Under Federal Rule of Civil Procedure 26(e), a party who has made a disclosure under Rule 26(a), or who has responded to an interrogatory, request for production, or request for admission, must supplement or correct that disclosure or response in a timely manner upon learning that it is incomplete or incorrect in some material respect. Fed. R. Civ. P. 26(e)(1)(A). This duty is not triggered, however, where the additional or corrective information has

5

already been made known to the other parties through the discovery process or in writing. *Id.* The obligation to supplement also arises independently when ordered by the court. Fed. R. Civ. P. 26(e)(1)(B). Critically, the duty to supplement is self-executing and ongoing. It does not expire at the close of discovery and does not require a request from the opposing party.

### C. Rule 37: Failure to Make Disclosures

Federal Rule of Civil Procedure 37(c)(1) sets forth the consequences for a party's failure to comply with its disclosure obligations under Rule 26(a) and/or (e). Fed. R. Civ. P. 37(c). Where a party fails to identify a witness or provide information as required, the defaulting party is not permitted to use that witness or information to supply evidence on a motion, at a hearing, or at trial. Fed. R. Civ. P. 37(c)(1). This preclusion sanction is automatic and self-executing unless the offending party can demonstrate that its failure was either "substantially justified" or "harmless." *Id. See also Dickenson v. Cardiac & Thoracic Surgery of E. Tenn.*, 388 F.3d 976, 983 (6th Cir. 2004). Beyond preclusion, Rule 37(c)(1) grants courts the discretion to impose additional or alternative sanctions, including an order requiring the non-compliant party to pay the reasonable expenses and attorney's fees caused by the failure, an instruction informing the jury of the party's non-compliance, or any of the broader sanctions enumerated in Rule 37(b)(2)(A)(i)–(vi). Fed. R. Civ. P. 37(c)(1)(A)–(C). The Court's inquiry therefore turns on whether the failure to timely disclose was substantially justified or harmless. *Howe v. City of Akron*, 801 F.3d 718, 747–48 (6th Cir. 2015). This is a determination that considers factors such as surprise to the opposing party, the ability to cure that surprise, the likelihood of disruption to trial, the importance of the evidence, and the nondisclosing party's explanation for its failure. *Id.* at 748 (citations omitted).

### III.   LAW AND ANALYSIS

**A. Plaintiff's Motion to Exclude the Volume 5 Document Production (Doc. 68)**

Plaintiff incorrectly suggests that CBRE failed to comply with Rule 26(a) when it did not include documentation with its initial disclosures. Doc. 68, PageID 1153. This is not a requirement of the Rule. Rule 26 plainly states that parties must disclose "*a copy*—or a description by category and location—of all documents . . . *the disclosing party has in its possession, custody, or control . . . .*" Fed. R. Civ. P. 26(a)(1)(A)(ii) (emphasis added). Contrary to Plaintiff's assertion, there is no requirement that CBRE actually produce the document itself, and in fact, doing so would have been impossible at the initial disclosure stage, given that this information was not yet in CBRE's *possession, custody, or control* and unavailable until after CBRE contacted Sterling—the background check vendor—on September 16, 2025, ultimately having to subpoena Sterling to obtain the document on September 25, 2025. Doc. 82, PageID 1604; Mejia Aff., Doc. 54. Subsequently, CBRE did produce that document on September 30, 2025, along with nearly 4,000 other documents in the ordinary course of discovery. Doc. 82, PageID 1604–06.

Plaintiff supports his assertion that Rule 26(a) requires the *production* of documents by citing inapplicable cases. For instance, Plaintiff cites *Scheel v. Harris*, No. 3:11-17-DCR, 2012 U.S. Dist. LEXIS 126448, at *4 (E.D. Ky. Sep. 6, 2012), but this case concerns the computation of damages, which is a subsection of Rule 26 that is wholly inapplicable here. *See* Fed. R. Civ. P. 26(a)(1)(A)(iii) (stating that a computation of each category of damages claimed by the disclosing party must be provided in addition to the documents or other evidentiary material on which the computation is based). Here, the contested document does not concern damages and thus does not fall within the ambit of Rule26(a)(1)(A)(iii).

Next, Plaintiff cites *Acuity Brands Lighting, Inc. v. Bickley*, No. 5:13-cv-366-DLB-REW, 2015 U.S. Dist. LEXIS 177183, at *5–6, 8 (E.D. Ky. Nov. 30, 2015) for the proposition that excluding discovery produced at the close of discovery, *i.e.*, at the "eleventh hour," is appropriate where the plaintiff was "stripped of any meaningful opportunity to prepare a cross examination." *Acuity*, 2015 U.S. Dist. LEXIS 177183, at *5–6 (citing *Innogenetics, N.V.  v. Abbott Labs*, 512 F.3d 1363, 1376 n.4 (Fed. Cir. 2008)). However, on September 30, 2025, in addition to supplementing its initial disclosures, CBRE offered to extend the discovery deadline, which Plaintiff opposed. Docs. 46, 47. Accordingly, Plaintiff had but forfeited an opportunity to review the late disclosures and, more importantly, the chance to meaningfully prepare a rebuttal case or cross-examine any key witnesses with the offer by CBRE to extend the discovery deadline. By refusing to cooperate with CBRE's counsel to continue discovery Plaintiff put himself in the predicament he now finds himself. As such, the contested production should not be excluded.

**B.  Plaintiff's Motion to Strike the Affidavit of Kathryn Mejia (Doc. 62)**

On February 12, 2025, CBRE agreed to produce its initial disclosures under Federal Rule of Civil Procedure 26(f) by March 14, 2025. Doc. 16. Then, on February 19, 2025, the Court entered a scheduling order requiring disclosure of lay witnesses by May 2, 2025, which CBRE satisfied, and set the deadline for discovery for September 30, 2025. Docs. 17, 22. It is undisputed that CBRE did not disclose Ms. Mejia in that May 2, 2025 disclosure, nor in the March 8, 2025 initial disclosures, or in the July 8, 2025 response to interrogatories. Doc. 62, PageID 1069–75; Doc. 81, PageID 1574.

Here, however, it is important to realize that Ms. Mejia did not become involved in the investigation into Plaintiff's background until September 12, 2025, a little more than two

8

weeks from when discovery was set to close. Doc. 81, PageID 1574; Mejia Aff., Doc. 54. At that time, Ms. Mejia began contacting Sterling—the background check vendor CBRE hired in 2021—to inquire about Plaintiff's employment history to address the absence of documents CBRE believed should have been produced by Plaintiff when it forwarded the production Plaintiff received from Sterling, namely the questionnaire form used in 2021. Mejia Aff., Doc. 54, PageID 529. Ms. Mejia's communications with Sterling continued through September 22, 2025. *Id.* On September 30, 2025, eight days after her last communication with Sterling and the final day of the discovery period, CBRE supplemented its Rule 26(a) initial disclosures and notified Plaintiff by email of its intention to call Ms. Mejia as a lay witness. Doc. 81, PageID 1574–75.

Assuming arguendo CBRE's supplement of its disclosures is untimely, it is both substantially justified and harmless. The Sixth Circuit considers five factors to assess whether an untimely supplemental disclosure is substantially justified or harmless: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability to cure that surprise; (3) the extent to which allowing the evidence would disrupt trial; (4) the importance of the evidence; and (5) the non-disclosing party's explanation for its failure to disclose the evidence." *Howe*, 801 F.3d at 748 (citations omitted).

Plaintiff cannot credibly claim that Ms. Mejia's disclosure came as a surprise under the first *Howe* factor. Her involvement was a direct and foreseeable consequence of Plaintiff's own actions. It was Plaintiff who forwarded Sterling's August 25, 2025 production to CBRE on September 12, 2025—eighteen days after receiving it—that prompted CBRE to investigate the gaps in Sterling's production in the first place, namely the whereabouts of the missing questionnaire form. Doc. 81, PageID 1573. Plaintiff should have realized that CBRE would

need to follow up on that production and that additional disclosure may need to be made. Additionally, in regard to the second *Howe* factor, Plaintiff was provided an opportunity to cure any surprise when, on September 30, 2025, CBRE offered to extend the discovery deadline to allow for Powell to have a reasonable opportunity to depose Ms. Mejia. *Id.* at PageID 1602. Instead of acquiescing and working with opposing counsel to extend the discovery deadline, Plaintiff opposed the extension of time. Doc. 59. Under the circumstances, the Court cannot conclude that the disclosure of Ms. Mejia incurably surprised Plaintiff.

The third of the *Howe* factors — disruption of trial — likewise weighs in favor of finding the disclosure harmless. In assessing this factor, the Sixth Circuit has held that an untimely disclosure does not significantly disrupt proceedings where trial has not yet commenced and the opposing party retains a meaningful opportunity to respond. *See Howe*, 801 F.3d at 749 (holding that where a retrial has not yet commenced and therefore the newly disclosed witness could be cross-examined). Here, the circumstances are even more favorable: no trial date has been set, and the case remains at the summary judgment stage.

The fourth factor, the importance of the evidence, weighs against exclusion. Ms. Mejia is CBRE's Head of U.S./Canada Preboarding Operations and thus has direct knowledge of the background check process used for Plaintiff knowledge not as readily available to any other disclosed witness. Mejia Aff., Doc. 54. Courts in the Sixth Circuit have consistently recognized that the importance of a witness's testimony weighs strongly against the drastic remedy of exclusion. *See Howe*, 801 F.3d at 748 (finding untimely disclosure harmless in part because the evidence bore directly on the central issues in the case). Exclusion of Ms. Mejia would deprive the factfinder of a witness with direct institutional knowledge of how CBRE

10

administered and monitored the Sterling background check process. This evidence is central to resolving whether Plaintiff accurately represented his employment history.

Finally, as to the fifth and final factor, based on the totality of the circumstances, CBRE's explanation for the timing of the disclosure is reasonable. At the risk of repeating, Ms. Mejia did not contact Sterling until September 16, 2025, and the information at issue that led to her need to be disclosed as a witness was identified and evaluated only after she became involved and undertook her review. Doc. 81, PageID 1589–98. CBRE's counsel promptly supplemented its disclosures once Ms. Mejia's involvement led to the recognition that additional information should be produced, and there is no indication of any strategic delay or bad faith on the part of CBRE to gain the upper hand. Doc. 81, PageID 1573. Under these circumstances, the timing of the disclosure reflects the natural progression of CBRE counsel's investigation rather than any attempt to gain an unfair advantage and thus constitutes a reasonable explanation. Accordingly, the Court finds that the untimely supplemental disclosure of Kathryn Mejia as a witness in these proceedings is substantially justified or harmless under each of the *Howe* factors and does not warrant the striking of her affidavit (Doc. 54).

### C.  Plaintiff's Motion for Sanctions (Doc. 70)

Plaintiff next contends that CBRE failed to produce any employee-witness for the noticed Rule 30(b)(6) deposition without obtaining a protective order and that sanctions are warranted under Rule 37(d)(2). Doc. 70.

Plaintiff seeks litigation ending sanctions ordered by the Court under Rule 37, including by: (1) resolving all disputed facts in his favor; (2) prohibiting CBRE from defending itself or introducing any evidence; (3) striking CBRE's answer and asserted defenses; (4)

11

entering default judgment in his favor; and (5) awarding him costs, fees, and expenses. Doc. 70, PageID 1266. Plaintiff's request is premised on CBRE's inability or refusal to produce a Rule 30(b)(6) witness on September 30, 2025, the final day of discovery, in response to Plaintiff's Rule 30(b)(6) notice containing twenty-five- topics served eleven days (seven business days) before the close of discovery. *Id.*

Rule 37(d)(1)(A)(i) authorizes sanctions only when "a party or a party's officer, director, or managing agent—or a person designated under Rule 30(b)(6)—fails, after being served with *proper notice*, to appear for that person's deposition." Fed. R. Civ. P. 37(d)(1)(A)(i) (emphasis added). Because the notice did not comply with Rule 30(b)(1) and Rule 30(b)(6), it was not "proper notice," and Rule 37(d) does not apply. The Court finds that Plaintiff's Rule 30(b)(6) notice did not constitute "proper notice" within the meaning of Rule 37.

Among other deficiencies, the notice failed to describe numerous topics with reasonable particularity and sought testimony on matters such as "facts pertaining to the allegations in the Complaint" and "facts pertaining to all asserted defenses," *see* Doc. 44, PageID 259, topics that courts in this Circuit have rejected as overbroad and lacking reasonable particularity. *See Majestic Bldg. Maint., Inc. v. Huntington Bancshares, Inc.*, No. 2:15-cv-3023, 2018 U.S. Dist. LEXIS 114267, at *15–20 (S.D. Ohio July 10, 2018) (finding that topics requesting all allegations in the complaint and answer, all communications, and all discovery documents produced to be overbroad and failing to satisfy the reasonable particularity requirement). Second, Plaintiff demanded testimony on twenty-five far-ranging and convoluted topics with only seven business days' lead time, including topics directed to Plaintiff's own discovery responses, CBRE's entire document production, and issues already explored in prior depositions. Doc. 44, PageID 259. This timing renders the notice

12

unreasonable as it would foreseeably require preparing multiple witnesses on numerous topics in a very short time, with no regard to their availability. In shockingly similar circumstances, a court in this District held that a request for production of a Rule 30(b)(6) designee was unreasonable where notice was given seven business days before the scheduled deposition. *NGOC Tran. v. Chubb Grp. of Ins. Cos.*, No. 2:14-cv-447, 2015 U.S. Dist. LEXIS 113963, at *18–19 (S.D. Ohio Aug. 26, 2015). *See also Brown v. Hendler*, No. 09-CIV-4486, 2011 U.S. Dist. LEXIS 9476, at *5 (S.D.N.Y. Jan. 31, 2011) (In the context of Rule 45, "[f]ederal courts have also found compliance times of eight and seven days not to be reasonable.").

In light of these defects, CBRE's inability to produce a prepared Rule 30(b)(6) designee on September 30, 2025, the close of discovery, does not constitute a sanctionable failure to appear within the meaning of Rule 37(d) and for the reasons stated will be denied. *See* Fed. R. Civ. P. 37(d)(1)(A)(i) (sanctions available only where deponent fails to appear "after being served with proper notice"); *Majestic*, 2018 U.S. Dist. LEXIS 114267 at 15–20*; NGOC Tran,* 2015 U.S. Dist. LEXIS 113963 at *18–19.

## IV.    CONCLUSION

Because Rule 26(a)(1)(A)(ii) did not require CBRE to produce the document as part of its initial disclosures, Plaintiff's Motion to Exclude CBRE's use of Production Volume 5 (Doc. 68) is **DENIED**. Similarly, because Plaintiff was not stripped of any meaningful opportunity to prepare an effective cross-examination of CBRE's witness Kathryn Mejia, after CBRE offered to extend discovery, Plaintiff's Motion to Strike the Affidavit of Kathryn Mejia

(Doc. 62) is likewise **DENIED**. Finally, because Plaintiff's Rule 30(b)(6) notice was improper,

Plaintiff's Motion for Sanctions (Doc. 70) is **DENIED**.[2]

      **IT IS SO ORDERED.**

June 23, 2026

Jeffery P. Hopkins
United States District Judge

---

[2]    The parties and their attorneys, in particular, are reminded of their ongoing obligations and responsibilities under S.D. Ohio Civ. R. 37.1. *See Oro BRC4, LLC v. Silvertree Apartments, Inc.*, No. 2:19-CV-4907, 2022 WL 19558082, at *3 (S.D. Ohio Mar. 18, 2022) (Local Rule 37.1 specifically provides that "[o]bjections, motions, applications, and requests relating to discovery shall not be filed in this Court under any provision in Fed. R. Civ. P. 26 or 37 unless the parties have first exhausted among themselves all extrajudicial means for resolving their differences.") The rule continues: "After extrajudicial means for the resolution of differences about discovery have been exhausted, in lieu of immediately filing a motion under Fed. R. Civ. P. 26 or 37, any party may first seek an informal telephone conference with the Judge assigned to supervise discovery in the case." S.D. Ohio Civ. R. 37.1. The Court is of the opinion that the filing of the current Motions could have been avoided had counsel worked harder on the timing and sequence for conducting discovery. In any case, future nonadherence to the provisions of Local Rule 37.1, may result in sanctions against both parties and their attorneys. *See also* Fed. R. Civ. P. 37(a)(1) ("[A] party may move for an order compelling disclosure or discovery. The motion must include a certification that *the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action*.") (emphasis added).

14