**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DEDRIC POWELL, | : | |
| *Plaintiff*, | : | Case No. 1:22-cv-496 |
| v. | : | Judge Jeffery P. Hopkins |
| CBRE, INC., | : | |
| *Defendant*. | : | |

---

**OPINION AND ORDER**

---

This matter is before the Court on cross-motions for summary judgment filed by Plaintiff Dedric Powell ("Plaintiff" or "Powell") and Defendant CBRE, Inc. ("Defendant" or "CBRE"). The case involves an employment agreement that never quite came to fruition. CBRE offered Plaintiff an executive position in the company's sales force, which he accepted. But after later discovering that Plaintiff did not list all his employers for the past seven years, which included a short stint of employment with CBRE, CBRE withdrew the offer, contending that Plaintiff did not properly complete his pre-employment questionnaire and thus did not pass the background check. After this Court ordered all other claims asserted in Plaintiff's Complaint dismissed, only one remains. Under that claim, Plaintiff alleges that CBRE breached an agreement to pay him a $600,000 signing incentive. It would have been less than prudent for CBRE to agree to such a large payout to a recent hire, or in this case a re-hire as a signing incentive, without conditions—and there were some.

CBRE contends that the agreement to hire Plaintiff is unenforceable because certain conditions precedent contained in the offer letter—including satisfactory completion of a

background check and an I-9 verification process to prove his eligibility to work in the United States—were never satisfied. In the alternative, CBRE argues that, even if Plaintiff became conditionally employed, triggering the language requiring payment of the $600,000 signing incentive, Plaintiff cannot establish entitlement to those funds under the offer letter's "Cause" provision. The parties have fully briefed the issues, and the matter is now ripe for final adjudication. For the reasons set forth below, the Court **DENIES** Plaintiff Dedric Powell's Motion for Summary Judgment (Doc. 57), **GRANTS** Defendant CBRE's Motion for Summary Judgment (Doc. 58), and **DISMISSES** Plaintiff Dedric Powell's Complaint (Compl., Doc. 2) **WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff initiated this action by filing a Complaint on July 21, 2022,[1] asserting five claims: (1) breach of contract; (2) breach of the covenant of good faith and fair dealing; (3) promissory estoppel; (4) conversion; and (5) civil theft. Compl., Doc. 2. Following briefing on CBRE's Motion to Dismiss (Doc. 6), the Court dismissed Counts two through five in their entirety. Doc. 13, PageID 146. The Court allowed the case to proceed solely as to the dispute over CBRE's refusal to pay the signing incentive. *Id.* at PageID 137–38. The parties have conducted discovery, and along the way filed several discovery-related motions. Specifically, Plaintiff filed motions to strike the affidavits of John Latessa (Doc. 67) and Kathryn Mejia (Doc. 62), as well as a motion to exclude Defendant CBRE's "Volume 5" document production (Doc. 68), and a motion for sanctions (Doc. 70), all of which the Court denied.

[1] The Undersigned's commission was signed by then-President Joseph R. Biden on December 8, 2022, and he was sworn into office on December 16, 2022. This case was among nearly three hundred other matters reassigned to the Undersigned, all having dispositive motions pending at the time of reassignment by order of the then-Chief Judge of the United States District Court for the Southern District of Ohio on December 21, 2022. *See* Doc. 9.

Docs. 108, 109. Following the close of discovery, both parties filed motions for summary judgment. Docs. 57, 58. The parties filed responses in opposition (Docs. 75, 77), followed by replies in support of their respective motions (Docs. 87, 88). The parties also submitted supplemental briefing. Docs. 101–05, 107. As noted, this matter is before the Court on the parties' cross-motions for summary judgment, which are now ripe for review. Docs. 57, 58.

## II. FACTUAL BACKGROUND

Well before this dispute arose, back in October of 2015, CBRE, a commercial real estate services and investment firm, employed Powell, among its real estate sales force. Powell Dep., Doc. 49, 30:6–21; 38:1–19; Powell Dep., Doc. 49, Exs. C–F, PageID 400–19. However, only about six months into his employment in April of 2016, Powell abruptly resigned from his position with CBRE. Powell Dep., Doc. 49, Ex. F, PageID 419. Years later, in 2021, CBRE's Division Director, Sam Sockwell ("Sockwell"), began recruiting for a senior sales manager and initiated the interview process with Powell, which lasted a couple of months and culminated in CBRE extending an offer of employment ("Offer Letter") to Powell. Def. Ex. A, Doc. 58, PageID 924–27; Powell Dep., Doc. 49, 77:3–20; 82:9–18; Sockwell Dep., Doc. 55, 20:18–24; 27:2–25. During the interview process, Powell submitted his resume and biography to CBRE several times but did not include with the materials presented any reference to his previous employment with CBRE. Powell Dep., Doc. 49, Exs. O–P, PageID 463–65; Powell Dep., Doc. 49, 53:13–17; 96:6–23.

CBRE's offer of employment to Powell included a signing incentive that was expressly contingent upon "satisfactory results of a background check" and completion of I-9 verification to show he was eligible to work in the United States. Def. Ex. A, Doc. 58, PageID 926. The Offer Letter stated those contingencies as follows:

> Contingencies:
>
> *This offer and your continued employment are contingent upon satisfactory results of a background check at the company's expense*. You will receive an email from Sterling Talent Solutions with instructions to complete background investigation requirements with a link to an electronic consent form. You are advised not to resign or leave your current employer or turn down other employment opportunities until you are notified that you have satisfactorily passed the background investigation.
>
> *This offer is also contingent upon our verification of your employment eligibility in the United States as required by Federal Immigration law.* After your offer letter has been accepted, you will be prompted to sign-in and complete Section 1 of your electronic I-9 Form using E-Verify *as part of the Pre-Boarding Process*.

*Id*. (emphasis added). As part of the background screening process, Powell received an electronic background check link from CBRE's vendor, Sterling Infosystems, Inc. ("Sterling Infosystems"), the company CBRE has historically used to perform background checks of CBRE's new hires, and responded to the request for information. Mejia Dep., Doc. 99, 21:6–24. The instructions for the background check, as described by CBRE's Talent Acquisition personnel, required applicants to provide the past seven years of employment history. Mejia Aff., Doc. 54, ¶ 5; Sells Aff., Doc. 53, ¶ 13.

In Powell's submission to CBRE, he listed only two previous employers—Jones Lang LaSalle and Veregate—but did not disclose his brief October 2015 to April 2016 employment tenure with CBRE. Def. Ex. F, Doc. 58, PageID 965–66. After learning of this omission, Sockwell, CBRE's Division Director, and Charles Sells ("Sells"), one of CBRE's People Directors, met with Powell to discuss the issue. Sockwell Dep., Doc. 55, 54:22–55:2; Sells Aff., Doc. 53, ¶¶ 2, 8. During that meeting, Sells contacted CBRE's Talent Acquisition team, which confirmed that Powell was asked to provide the past seven years of employment history and did not do so. Sells Aff., Doc. 53, ¶ 13; Def. Ex. G, Doc. 58, PageID 984–85.

To understand the significance of Powell's meetings with Sockwell and Sells and the discussions that took place surrounding Powell's previous employment, it is necessary to jump ahead to the events which occurred after the Complaint (Compl., Doc. 2) was filed in the case. Toward the end of discovery, Kathryn Mejia ("Mejia"), a member of CBRE's Talent Acquisition team, contacted Sterling Infosystems, the vendor CBRE used in 2021 to screen prospective employees, regarding the background check ordered for Powell. Mejia Dep., Doc. 99, 21:13–17. Mejia testified that Sterling Infosystems reported that the background check requested for Powell was a "Standard No Drug (7)" package but was unable to locate the precise instructions used for Powell in 2021. *Id*. at 22:7–24. However, Sterling Infosystems did provide an exemplar of the screening questions for its current Standard No Drug (7) background check, which are designed to capture seven years of employment history and to require applicants either to provide seven years of prior employment or, in the alternative, list a combination of up to "twelve (12) present and past employers." Mejia Aff., Doc. 54, ¶ 5; Nager Dep., Doc. 100-1, 42:12–43:24; Nager Dep., Doc. 100-1, Ex. C, PageID 2016.

Back to the story of Powell's 2021 onboarding. The record reflects that sometime during August of 2021, certain CBRE employees became fully aware that Powell had been previously employed by CBRE. For example, on August 17, 2021, Powell received an email from Julie Smith, one of CBRE's People Directors, thanking Powell for discussing his "*return* to CBRE." Smith Dep., Doc. 76, 38:8–13; 43:25–44:25 (emphasis added). In similar fashion, Sells, another of CBRE's People Directors, sent an internal email to other CBRE employees questioning why a W-2 had been sent for Powell and receiving a response that it was based on loan forgiveness related to Powell's previous employment with CBRE that ended in 2016. Pl. Ex. 1, Doc. 57-1, PageID 830–31, 887. The W-2 reflects CBRE's position that Powell

owed $125,000 on a loan incurred during his prior employment with the company. Pl. Ex. 1, Doc. 57-1, PageID 887; Powell Dep., Doc. 49, 35:4–15; Doc. 58, PageID 898. All these events took place after CBRE had already sent Powell the Offer Letter. By that time, too, CBRE's Talent Acquisition team had also informed Powell by email on July 29, 2021, that he had "successfully cleared the background screening process" and that he would be contacted with information about his first day of employment. Powell Dep., Doc. 49, Ex. 5, PageID 496.

In the midst of all these communications, CBRE's Division Director, Sockwell concluded that Powell's omission of his prior CBRE employment from the background check submission was dishonest and inconsistent with CBRE's values. Sockwell Dep., Doc. 55, 62:9–63:19. Consequently, on August 20, 2021, CBRE sent Powell a letter formally withdrawing the employment offer. Powell Dep., Doc. 49, Ex. T, PageID 471. The letter further explained that the decision was based on "material omissions" from Powell's application related to his prior employment history with CBRE. *Id*. Importantly, also, the letter indicated that CBRE would reconsider its decision if Powell provided additional information explaining the omissions in his application. *Id.* Despite receiving the CBRE letter, Powell did not provide additional information. Powell Dep., Doc. 49, 107:7–13. Instead, Powell filed suit in state court seeking specific performance of the alleged employment agreement (which, as noted, the Court earlier dismissed) and claiming that CBRE had breached the agreement to pay him the $600,000 signing incentive (the issue currently under review). Compl., Doc. 2. The case was promptly removed to this Court based on diversity jurisdiction. *See* Doc. 1.

The Court turns to the parties' cross-motions for summary judgment for a determination of whether CBRE must pay Powell the $600,000 signing incentive he claims is

owed under the Offer Letter, the sole claim remaining. The Court will first address CBRE's motion for summary judgment (Doc. 58), and if necessary, then consider Powell's motion for summary judgment (Doc. 57).

## III. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "'always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions' of the record which demonstrate 'the absence of a genuine issue of material fact.'" *Rudolph v. Allstate Ins. Co.*, No. 2:18-cv-1743, 2020 WL 4530600, at *3 (S.D. Ohio Aug. 6, 2020) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). In deciding a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Cox v. Ky. Dep't of Transp.*, 53 F.3d 8146, 150 (6th Cir. 1995) ("In arriving at a resolution, the court must afford all reasonable inferences, and construe the evidence in the light most favorable to the nonmoving party.").

The non-movant cannot defeat summary judgment merely by pointing to any factual dispute. Indeed, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Int'l Outdoor, Inc. v. City of Troy*, 974 F.3d 690, 697 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986)). A fact is *material* if its resolution affects the outcome of an action, and a dispute is *genuine* if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At bottom, the Court must determine whether there is some

"sufficient disagreement" that necessitates submitting the matter to a jury. *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251–52).

Furthermore, as here, when parties file cross motions for summary judgment, "[e]ach party, as a movant for summary judgment, bears the burden of establishing that no genuine issue of material fact exists and that he or she is entitled to judgment as a matter of law." *Fed. Energy Regul. Comm'n v. Coaltrain Energy, L.P.*, 501 F. Supp. 3d 503, 522 (S. D. Ohio 2020). "The fact that one party fails to satisfy that burden on his or her own Rule 56 motion does not automatically indicate that the opposing party or parties has satisfied the burden and should be granted summary judgment on the other motion." *Id.*

## IV. LAW AND ANALYSIS

### A. The Parties Formed a Valid Contract, but It Is Unenforceable Due to Powell's Failure to Satisfy the Agreement's Conditions.

Under Ohio law, a valid contract requires "an offer, an acceptance, contractual capacity, consideration (the bargained-for legal benefit or detriment), a manifestation of mutual assent, and legality of object and of consideration." *Lake Land Emp. Group of Akron, LLC v. Columber*, 2004-Ohio-786, ¶ 14; *Stonebridge Operating Co., LLC v. Antero Res. Corp.*, 510 F. Supp. 3d 567, 575 (S.D. Ohio 2020) (citing *Kostelnik v. Helper*, 2002-Ohio-2985, ¶ 16). Also, under Ohio law, a breach of contract claim consists of four required elements: "(1) the existence of a contract; (2) performance by the plaintiff; (3) breach by the defendant; and (4) damage or loss to the plaintiff as a result of the breach." *Shanghai Weston Trading Co., Ltd. v. Tedia Co., LLC*, No. 1:23-cv-117, 2026 WL 878887, at *5 (S.D. Ohio Mar. 31, 2026) (quoting *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 465 (6th Cir. 2012)). "A cause of action for breach of contract requires the claimant to establish the existence of a contract, the failure

without legal excuse of the other party to perform when performance is due, and damages or loss resulting from the breach." *Lucarell v. Nationwide Mut. Ins. Co.*, 2018-Ohio-15, ¶ 41.

Here, there is no dispute that Powell received an Offer Letter from CBRE and that he accepted the offer of employment. *See* Def. Ex. A, Doc. 58, PageID 924–27. Coupled with the job offer, CBRE's Offer Letter also contained the framework for Powell to receive a one-time signing incentive, which provides, in relevant part, as follows:

> [Y]ou will be paid a one-time only Signing Incentive of $600,000.00, payable and earned on the following terms and conditions . . . [s]hould you terminate your employment voluntarily prior to five years of service, you will not have earned the Signing Incentive and you agree to repay to CBRE the full amount of the Advance . . . [i]n the event that your employment or association with CBRE is terminated within five years from the Effective Date: (A) by CBRE for other than "Cause" (as defined in CBRE's Severance Plan) . . .

*Id*. As specified in the Offer Letter, Powell would be paid the signing incentive as a condition of his successful onboarding and continued employment with CBRE for at least five years, and if Powell did not fulfill those contingencies, he would have to *repay* the one-time signing incentive of $600,000. *Id*. In addition to those items, the Offer Letter also imposed two other contingencies. Powell would also need to obtain "satisfactory results of a background check," and I-9 verification. *Id.* at PageID 926. CBRE argues that Powell's claim for payment of the signing incentive fails as a matter of law because "indisputable facts in the record demonstrate" that "the express contingencies of the Offer Letter were not satisfied," namely the successful completion of a background check and verification of his eligibility to work in the United States. Doc. 58, PageID 904. According to CBRE, because these two conditions precedent were not met, "[Powell] cannot show that an enforceable contract existed." *Id*. CBRE also contends that "under the unambiguous terms of the Offer Letter, Powell did not earn the Signing Incentive" and that "even if CBRE had paid the Signing Incentive, Powell

was obligated to return it when CBRE effectively terminated its association with him for 'Cause.'" *Id.*

Unsurprisingly, Powell views the situation quite differently. While acknowledging that CBRE's Offer Letter contained two contingencies, Powell maintains that he satisfied the conditions precedent to his CBRE employment offer, thereby creating a binding contract. Doc. 57, PageID 804. Pointing to the completed report by Sterling Infosystems which showed that he had "PASSED" the background check, Powell strenuously argues that he successfully met that requirement. *Id*. at PageID 805. Similarly, Powell contends that had he been presented with the opportunity, he would have easily demonstrated his ability to work in the United States, in satisfaction of the I-9 verification requirement. *Id*. There is no dispute between the parties that CBRE sent Powell a letter on August 20, 2021, withdrawing its offer of employment and that Powell did not begin work at CBRE on August 24, 2021, as had been indicated in email correspondence. Powell Dep., Ex. T, Doc. 49, PageID 471; Powell Dep., Ex. O, Doc. 49, PageID 463.

*1. The Parties Formed a Valid Contract.*

Powell alleges in the Complaint (Compl., Doc. 2) that the parties entered into a valid contract that required CBRE to pay him $600,000 as a signing incentive if certain conditions were met. At its core, the dispute now before the Court concerns whether the Offer Letter Powell received from CBRE, which included payment of a $600,000 signing incentive, is an enforceable contract. The outcome in this proceeding thus turns, in part, on whether Powell complied with the conditions precedent outlined in the Offer Letter, *i.e.*, that he (1) obtained "satisfactory results of a background check"—a condition precedent; (2) completed the I-9

verification—a condition precedent[2]; and (3) remained employed with CBRE and did not "terminate [his] employment voluntarily prior to five years of service" or "[i]n the event that [his] employment or association with CBRE [was] terminated within five years from the Effective Date . . . [and the termination was initiated] by CBRE for other than 'Cause' (as defined in CBRE's Severance Plan) . . . ." Def. Ex. A, Doc. 58, PageID 924–27. Powell's failure to satisfy any one of these conditions is fatal to his claim for breach of contract.

To start, Ohio law does not favor conditions precedent, and courts will avoid interpreting contract language in that manner unless the parties unmistakably intended the contract to hinge on the condition. *Adkins v. Bratcher*, 2009-Ohio-42, ¶ 32 (4th Dist.) (citation omitted); *Coldwell v. Moore*, 2017-Ohio-526, ¶ 31 (7th Dist.); *Grigoryan v. MaxOut Sports, L.L.C.*, 2017-Ohio-6982, ¶ 28 (8th Dist.) (citations omitted). Under Ohio law, "[a] 'condition precedent' is one that is to be performed *before* the agreement becomes effective, and which calls for the happening of some event or the performance of some act . . . before the contract shall be binding on the parties." *Mumaw v. W. & S. Life Ins. Co.*, 97 Ohio St. 1, 11 (1917); *Ohio Natl. Life Assur. Corp. v. Satterfield*, 194 Ohio App.3d 405, 410 (9th Dist. 2011) ("A condition precedent is 'an act or event, other than a lapse of time, which must exist or occur before a

---

[2] As cited earlier, the language that appears in the Offer Letter that Powell received from CBRE, dated July 20, 2021, containing the two conditions precedent reads as follows:

> Contingencies:
>
> This offer and your continued employment are *contingent upon satisfactory results of a background check* at the company's expense. You will receive an email from Sterling Talent Solutions with instructions to complete background investigation requirements with a link to an electronic consent form. You are advised not to resign or leave your current employer or turn down other employment opportunities until you are notified that you have satisfactorily passed the background investigation. *This offer is also contingent upon our verification of your employment eligibility in the United States as required by Federal Immigration law.* After your offer letter has been accepted, you will be prompted to sign-in and complete Section 1 of your electronic I-9 Form using E-Verify *as part of the Pre-Boarding Process.*

Def. Ex. A, Doc. 58, PageID 926 (emphasis added).

duty of immediate performance of a promise arises.'") (citations omitted); *Webb v. Pewano, Ltd.*, 2009-Ohio-2629, ¶ 15 (12th Dist.) ("If a condition precedent is not fulfilled, the parties are excused from performing under the contract."); *see also Carter v. New Buckeye Redev. Corp.*, 1998 WL 158855, *3 (8th Dist. Apr. 2, 1998) (stating that "[a] condition subsequent occurs when a contract was formed, but the parties agree that if certain contingencies occur, the contract will no longer be in effect").

Putting an even finer point on the doctrine, one respected Ohio appeals court said this: "A condition precedent is 'an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due.'" *Little v. Real Living HER*, 2014-Ohio-5664, ¶ 12 (10th Dist.) (citations omitted). As a result, a promisor's contractual obligations arise only when the necessary conditions precedent occur, that is, unless those conditions are excused. *Morrison v. Bare*, 2007-Ohio-6788, ¶ 18 (9th Dist.); *Campbell v. George J. Igel & Co., Inc.*, 2013-Ohio-3584, ¶ 13 (4th Dist.) (citation omitted). Some courts in Ohio, we think, mistakenly hold that a provision in a contract that contains a condition precedent, which goes unfulfilled, voids the contract altogether. *Compare Carter*, 1998 WL 158855, *3 ("[I]f a condition precedent was not fulfilled, then no contract . . . existed."), *with Baumgardner v. Bimbo Food Bakeries Distrib., Inc.*, 697 F. Supp. 2d 801, 808 (N.D. Ohio 2010) ("[A] failure to satisfy a condition precedent excuses performance under a contract, or, alternatively put, renders a contract unenforceable, but *does not* affect the validity of the contract.") (emphasis added).

Along those lines, we think the better view is represented by the court in *Baumgardner*, which follows the Restatement. *See* Restatement (Second) of Contracts § 224 (Am. L. Inst. 1981) ("A condition is an event, not certain to occur, which must occur, unless its non-

occurrence is excused, before performance under a contract becomes due."). Quoting § 224 of the Restatement (Second) of Contracts, *Baumgardner* noted that "it is better to view a contract as already in existence, but with the parties' respective performances subject to the specified event, which is a condition to their respective performances." *Baumgardner*, 697 F. Supp. 2d at 808 (citation omitted). This approach more closely aligns with the Ohio Supreme Court's holding in *Mumaw. Mumaw*, 97 Ohio St. at 11 ("[A] 'condition precedent' is one that is to be performed before the agreement becomes effective.").

Under this approach and drawing all inferences in the light most favorable to Powell for purposes of resolving CBRE's motion for summary judgment, as we must, the Court finds that the parties' agreement to pay the signing incentive currently in dispute is a valid contract. *See Baumgardner*, 697 F. Supp. 2d at 808. While this Court finds that it remains a valid contract, the contract between CBRE and Powell may not be *enforceable*. Here, there is no dispute among the parties that the contingencies that Powell had to obtain, including the "satisfactory results of a background check" and completion of his I-9 verification, constitute conditions precedent. Def. Ex. A, Doc. 58, PageID 924–27. CBRE takes the position that the agreement to pay Powell the $600,000 signing incentive "did not become an *enforceable* contract." Doc. 58, PageID 904 (emphasis added). The Court agrees.

*2. Powell Failed to Satisfy the Background Check Condition Precedent.*

We begin the discussion by recognizing the long-standing proposition that "[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 15 Ohio St.3d 321, 322 (1984) (citation omitted). Here, there is no genuine dispute of material fact that the background check at issue in this litigation required Powell to disclose the past

seven years of his prior employment. Mejia Aff., Doc. 54, ¶ 5; Sells Aff., Doc. 53, ¶ 13. Although Powell sought to equivocate during his deposition, there can be no serious debate that Powell was employed by CBRE from October 2015 to April 2016. Powell Dep., Doc. 49, Ex. F, PageID 419; Powell Dep., Doc. 49, Ex. C, PageID 400–03. Moreover, CBRE has introduced affirmative evidence through affidavits and deposition testimony that its 2021 background screening process prompted all job applicants, including Powell, to provide seven years of employment history. Sells Aff., Doc. 53, ¶ 13; Mejia Aff., Doc. 54, ¶ 5; Mejia Dep., Doc. 99, 22:7–24. Adam Nager, the Compliance Manager at Sterling Infosystems, likewise testified that the background check requested for Powell in 2021 was a Standard No Drug (7) background check, and that the "(7)" typically refers to the number of years of past employment that will be examined. Nager Dep., Doc. 100-1, 24:15–26:20.

Although Sterling Infosystems could not produce the precise instructions given to Powell in 2021, it produced exemplar screening questions for its current Standard No Drug (7) background check in use by CBRE, which are designed to capture seven years of employment history and requires applicants either to provide seven years of prior employment or, in the alternative, list a combination of up to "twelve (12) present and past employers" that covers that period. Mejia Aff., Doc. 54, ¶ 5; Nager Dep., Doc. 100-1, Ex. C, PageID 2006–18. That Nager, the Sterling Infosystems' Compliance Manager, could not definitively confirm that this exact Standard No Drug (7) template was used in 2021 is of no moment. There is no evidence in the record that supports the notion that any materially different standard or scope of questions applied to Powell's screening or that the up to "twelve (12) present and past employers" listings option language in the screening questions permitted him to omit employers—such as CBRE—which fell within that window. Mejia Aff., Doc. 54, ¶ 5.

On this record, the only reasonable inference that can be drawn is that the 2021 Standard No Drug (7) background check likewise required Powell to disclose his prior CBRE employment. Any suggestion that the 2021 questionnaire either omitted the seven-year requirement or included an alternative that excused disclosure of that employment is speculative, at best, and unsupported by affirmative evidence. *Gooden v. City of Memphis Police Dep't*, 67 F. App'x 893, 895 (6th Cir. 2003) ("Conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not enough to defeat a well-supported motion for summary judgment.").

Summary judgment is appropriate where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party," and "[t]he mere existence of a scintilla of evidence" or "merely colorable" evidence is insufficient. *Anderson*, 477 U.S. at 248–49, 252. Likewise, the moving party may carry its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325. Here, CBRE has produced unrebutted evidence that the background check which Sterling Infosystems has used consistently over the past several years (like the one currently in use to onboard new hires) also required disclosure of seven years of employment. Coupled with that, Plaintiff has not identified any evidence in the record—documentary or testimonial—suggesting a different background check requirement was used for Powell in 2021. At most, Plaintiff posits a hypothetical possibility that the 2021 form *might* have differed from the exemplar Sterling Infosystems produced of the current Standard No Drug (7) background check used by CBRE's vendor. That kind of speculation about what the background check form "might" have said is not enough to change the result obtained here—especially when there is consistent testimony, and no evidence to the contrary, showing that

the "twelve (12) present and past employers" language was meant to allow a job applicant to leave off the submission any previous employers. Mejia Aff., Doc. 54, ¶ 5. As the Supreme Court explains, this is precisely the sort of speculative and "not significantly probative" showing that *Anderson* holds is insufficient to defeat summary judgment. *Anderson*, 477 U.S. at 249.

Without access to the exact questions presented to Powell in 2021, the factfinder could only speculate as to whether the background check omitted the requirement that applicants include a seven-year employment history or used some materially different formulation. On this record, and under *Anderson* and *Celotex*, no reasonable factfinder could conclude that Powell was not required to disclose seven years of prior employment as part of the 2021 background check, and no reasonable factfinder could find that he accurately disclosed his prior employment with CBRE, given that he left off the application submitted any mention of his previous employment with CBRE from October 2015 through April 2016. Sells Aff., Doc. 53, ¶ 13; Def. Ex. G, Doc. 58, PageID 984–85. Because Powell did not satisfy this condition precedent, the contract for payment of the one-time $600,000 signing incentive is unenforceable against CBRE. *Anzalaco v. Graber*, 2012-Ohio-2057, ¶ 28 (8th Dist.) ("[T]he failure [to perform] a condition precedent . . . prevent[s] the parties from entering into an enforceable agreement.").

Powell relies heavily upon the reported "PASSED" message on his background check and Mejia's testimony that CBRE generally accepts a "PASSED" notification as satisfactory. Mejia Dep., Doc. 99, 23:14–22. Under the facts here, however, a "PASSED" score generated on incomplete information resulting from material omissions concerning Powell's past 2015 to 2016 employment with CBRE does not establish that the contractual condition—

satisfactory results of a background check—was met. Given the undisputed evidence that Powell omitted his 2015 to 2016 CBRE employment from the required employment history, no reasonable factfinder could conclude that CBRE was obligated to treat the background check results as complete or satisfactory under the terms of the Offer Letter, particularly in light of CBRE's discovery of Powell's omissions during the early stages of the onboarding process, after he had been extended an employment offer in 2021. Powell Dep., Doc. 49, Ex. T, PageID 471; Def. Ex. A, Doc. 58, PageID 924–27. The Court is reminded, also, that the Offer Letter stated that "[Powell's] continued employment [was] contingent upon satisfactory results of a background check at the company's expense." Def. Ex. A, Doc. 58, PageID 926.

In an effort to divert attention from the lack of compliance with the explicit terms of the condition precedent, Powell points to internal emails suggesting that certain employees at CBRE were well aware of the fact that Powell had previously worked there. Pl. Ex. 1, Doc. 57-1, PageID 830–32. These emails may show that certain CBRE employees knew Powell had previously worked for CBRE. They do not, however, address the content of the background check questionnaire or in any way alter Powell's obligation to provide complete and accurate employment history over the preceding seven years as part of that process. Nor do they provide evidence that CBRE considered Powell's omission consistent with satisfactory results of a background check under the Offer Letter. Simply put, knowledge by certain CBRE employees of Powell's work history with the company in no way contradicts Sterling Infosystems' Compliance Officer, Nager's testimony that the background check requested for Powell was a Standard No Drug (7) check requiring disclosure of seven years of prior employment or the exemplar showing that the current Standard No Drug (7) screening requests seven years of employment history. Nager Dep., Doc. 100-1, 42:12–43:24; Nager

Dep., Doc. 100-1, Ex. C, PageID 2006–18. In the absence of any evidence that a different background-check standard applied in 2021, these emails do not create a genuine dispute of material fact as to whether Powell satisfied the background check condition precedent and thus whether an enforceable contract has been demonstrated. *Webb*, 2009-Ohio-2629, ¶ 15.

The satisfactory completion of that background check "became a condition precedent that had to be satisfied before the contract could become enforceable." *Whitaker v. Advantage RN, L.L.C.*, 2012-Ohio-5959, ¶ 25 (12th Dist.) (stating that the contract between appellant and his employer was "contingent upon his complying with" the condition precedent of satisfying hospital assurance standards); *Doe v. Ronan*, 2010-Ohio-5072, ¶ 19 (noting that employee was only conditionally employed "pending the results of his background check. When these results indicated that [he] failed to meet the state-certification requirement, [the employee] was unable to meet the condition precedent that would have triggered [his employer's] obligation to perform the contract"). In short, Powell failed to satisfy CBRE's mandatory background check requirement, which was a prerequisite to his receiving the $600,000 signing incentive offered by the company.

*3. Powell Failed to Satisfy the I-9 Verification Condition Precedent.*

The Offer Letter that Powell received from CBRE also required, as a condition precedent, that Powell provide information verifying his eligibility for employment in the United States. Def. Ex. A, Doc. 58, PageID 926. Here, CBRE withdrew its offer prior to Powell's scheduled first day when he was to complete his I-9 verification, so this condition precedent remained unsatisfied as well. Powell Dep., Doc. 49, Ex. T, PageID 471. Powell asserts, however, that the prevention of performance doctrine precludes CBRE from relying "on the supposed nonperformance of this contingency" since CBRE deprived him of the

opportunity to complete the I-9 verification in order to satisfy that condition precedent. Doc. 75, PageID 1406.

"The prevention of performance doctrine provides that a party who prevents another from performing its contractual obligations cannot rely on that failure of performance to assert breach of contract." *Lucarell*, 2018-Ohio-15, ¶ 54. The prevention of performance doctrine does not help Powell in this instance. First, the "prevention of performance is usually used as a *defense* to a claim for breach of contract," and not as an affirmative tool or sword to compel performance by another party to the contract as Plaintiff attempts to do here. *Bd. of Edn., Toronto City Schs. v. Ascent Resources – Utica, LLC*, 2024-Ohio-1436, ¶ 72 (7th Dist.) (emphasis added). Second, Powell's failure to satisfy the background-check condition precedent resulted in CBRE withdrawing Powell's offer. Powell Dep., Doc. 49, Ex. T, PageID 471. Thus, Powell's failure to satisfy the employment-verification condition precedent was a natural consequence of his failure to satisfy the other condition precedent. Present here is a condition upon another condition. Powell has made no showing that CBRE had an obligation to facilitate Powell's employment-verification after he failed to meet the first of two interdependent conditions precedent. In the absence of satisfaction of either condition—satisfactory completion of the background check or I-9 verification—the Offer Letter did not ripen into an enforceable contract. *Webb*, 2009-Ohio-2629, ¶ 15.

### B. Even If the Agreement Was Enforceable, Powell Is Not Entitled to the Signing Incentive Because He Was Terminated for Cause.

Even assuming, contrary to the Court's findings, that Powell satisfied the conditions precedent, the record is insufficient to demonstrate that Powell is entitled to the $600,000 signing incentive. The Court has already determined that a valid contract to pay the $600,000 signing incentive existed. Under the contract, the $600,000 became payable to Powell on the

"Effective Date." However, that term is not defined anywhere in the agreement. *See* Doc. 13, PageID 132. Under Ohio law, when an effective date is unclear, courts can affix the date by which a condition contained in a contract becomes effective based upon what is reasonable, and in this instance, the Court presumes that the signing incentive became payable on the date Powell was offered and accepted employment with CBRE. *See Shrock v. Mullet*, 2019-Ohio-2707, ¶ 25 (7th Dist.); *Biggs v. Bernard*, 98 Ohio App. 451 (6th Dist. 1954); *Walkana v. Hanna*, 1988 WL 117988, *3 (7th Dist. Oct. 28, 1988) ("Although the duration of a contract should be definite, it is a general rule that where no time is agreed upon for its completion, it must be completed within a reasonable time under all of the circumstances."); *Stern Enters. v. Plaza Theaters I & II, Inc.*, 105 Ohio App.3d 601, 607 (11th Dist. 1995) ("Since the contract does not specify a date on which appellees were required to perform, *i.e.*, tender payment based upon the accounting, contract law requires that performance be completed within a 'reasonable time.'") (citation omitted).

For purposes of resolving the question now before the Court, more important than the Effective Date is the discussion of whether the signing incentive *ever* became payable to Powell. To receive and retain the $600,000 signing incentive, Powell had to refrain from "terminat[ing] [his] employment voluntarily prior to five years of service" and avoid having "[his] employment or association with CBRE . . . terminated within five years from the Effective Date . . . by CBRE for other than 'Cause' (as defined in CBRE's Severance Plan) . . . ." Def. Ex. A, Doc. 58, PageID 924. As earlier noted, "[i]f a contract is clear and unambiguous, then its interpretation is a matter of law and there is no issue of fact to be determined." *Inland Refuse Transfer Co.*, 15 Ohio St.3d at 322 (citation omitted). Here, the parties unmistakably intended for payment under the signing incentive contract to hinge on

an express condition which can only be characterized as a condition subsequent. *See Maurer v. Chandler*, 96 Ohio App. 471, 475 (5th Dist. 1954) ("'A contingency stipulated in a contract, on the happening or performance of which the contract, already in effect, may be defeated, constitutes a condition subsequent.") (citation omitted); *Hongosh v. Piszko*, 1983 WL 3003, *3 (8th Dist. May 19, 1983) ("A condition subsequent is a contingency whose fulfillment terminates or defeats a valid and existing contract.").

Courts in Ohio look upon conditions subsequent contained in contracts with equal disdain as they do in cases where conditions precedent are said to exist. *Kratz v. Risch*, 30 Ohio Dec. 589, 595 (C. P. 1912) ("It is true that courts are inclined to construe a condition subsequent in preference to a condition precedent, but at the same time conditions subsequent are not favored in law."); *Second Church of Christ, Scientist, of Akron v. Le Prevost*, 67 Ohio App. 101, 104 (9th Dist. 1941) ("It is settled that conditions subsequent are not favored in law and are looked upon with disfavor."). Nevertheless, the Court finds that the provision of the contract currently under scrutiny calling for payment of the $600,000 signing incentive constitutes the rare case where a condition subsequent exists.

The Offer Letter specified that "[i]n the event your employment or association with CBRE is terminated within five years from the Effective Date by CBRE for Cause, you will repay to CBRE the full amount of the Advance." Def. Ex. A, Doc. 58, PageID 924. "Cause" is defined as "*any act* of fraud, embezzlement or other *dishonesty* in connection with [employee's] duties and obligations," (Def. Ex. C, Doc. 58, PageID 937) and "*any unethical act* or willful misconduct (including willful violation of a Company policy) or gross negligence that would adversely and materially impact on the character, goodwill and public reputation of CBRE or *that would result in financial harm to the Company*," as well as "material

misrepresentation regarding personal and/or Company performance and/or the Company's records for personal or family financial benefit." Sockwell Dep., Doc. 56, PageID 776 (emphasis added).

It is undisputed that Powell transmitted his resume and biography to CBRE multiple times during the interview process, each time leaving off his previous 2015 to 2016 employment history with CBRE. Powell Dep., Doc. 49, Exs. O–P, PageID 463–65. As discussed above, while Sterling Infosystems could not reproduce the exact instructions presented to Powell during the 2021 background check, the only reasonable inference that can be drawn from the unrebutted testimony and exemplars produced in the case is that the Standard No Drug (7) screening required disclosure of seven years of employment history. And, as a failsafe, Sterling Infosystems also had in place a mechanism for capturing information concerning the up to "twelve (12) past and present employers" Powell may have had within that same seven-year window, including CBRE, which was not followed. Mejia Aff., Doc. 54, ¶ 5. On this record, Powell's repeated omission of his prior CBRE employment from both his application materials and the background-check process constitutes, at a minimum, an "act of . . . dishonesty in connection with [the employee's] duties and obligations," and one that is "unethical . . . that would result in financial harm to the Company," within the meaning of the Offer Letter's "Cause" definition. *See* Def. Ex. C, Doc. 58, PageID 937.

Accordingly, even if the Court were to assume that Powell became conditionally employed after receiving the Offer Letter and accepting the position with CBRE, no reasonable factfinder could conclude that CBRE lacked "Cause" to terminate its association with him, thus making the signing incentive portion of the agreement unenforceable and the

$600,000 otherwise nonpayable. There is no dispute that Powell did not provide complete answers to direct questions on the questionnaire for the 2021 background check pertaining to his past employment with CBRE. Powell Dep., Doc. 49, Ex. T, PageID 471; Powell Dep., Doc. 49, 107:7–13. Because the hiring officials at CBRE concluded that Powell withheld relevant and important personal information about his previous employment with CBRE, and Powell made no attempt to explain why he failed to list CBRE on the Sterling Infosystems questionnaire when given the opportunity, CBRE permissibly ended his candidacy for employment. Powell's failure to satisfy the condition subsequent, which included avoiding having "[his] employment or association with CBRE . . . terminated within five years from the Effective Date . . . by CBRE for other than 'Cause' (as defined in CBRE's Severance Plan)," meant that the contract for the signing incentive was voided and he has no valid claim to the $600,000 payment under that agreement. Def. Ex. A, Doc. 58, PageID 924.

Under the unambiguous terms of the signing incentive provision, a for-cause termination within five years extinguished any right Powell may have had to retain the $600,000 signing incentive. Even if CBRE had paid Powell the signing incentive, he would have been required to repay those funds immediately. *Id.* All that occurred here is that CBRE eliminated the unnecessary step of having to pay Powell the $600,000 signing incentive first, only to then have to turn right around and demand immediate repayment. This would constitute a useless ceremony, which from long tradition the law has never required. The Latin maxim, *quod vanum et inutile est, lex non requirit*, which holds that "the law does not require the doing of vain things," has been observed by Ohio courts now for more than a century. *George Wiedemann Brewing Co. v. Maxwell*, 78 Ohio St. 54, 66 (1908). For this reason, the Court will not take CBRE to task for refusing to pay the signing incentive to Powell in

this case under the parties' agreement, valid though it may be. S*ee MoonScoop SAS v. Am. Greetings Corp*., 489 Fed. App'x 95, 104 (6th Cir. 2012) (McKeague, J., concurring in part and dissenting in part); *Thomas v. Matthews*, 94 Ohio St. 32, 51 (1916) (stating that "before recovery can be had upon a contract the plaintiff must show either that he substantially performed or tendered performance of the conditions on his part to be performed"); *Gebbie v. Efros*, 95 Ohio St. 215, 221–22 (1917) (noting that the general rule is "subject to the exception that a tender is unnecessary where it would be merely a useless ceremony, as where the vendor is clearly unable to perform his part of the contract"); *Farmers Comm. Co. v. Burks*, 130 Ohio App.3d 158, 172 (3rd Dist. 1998) ("Once one party to a contract repudiates, the other party is entitled to a judgment without the necessity of tendering performance.") (citation omitted).

Powell's protestations, notwithstanding, he cannot now express surprise by the result reached by the Court in this case. Had information about Powell's previous employment with CBRE from October 2015 and April 2016, been earlier divulged on the questionnaire he submitted to Sterling Infosystems, it would undoubtedly have raised questions sooner among CBRE hiring officials about the alleged outstanding debt CBRE claims it had written off. Regardless of whether Powell acted inadvertently or purposefully, or whether the debt CBRE claims he owes is valid or not, the fact remains that Powell did not disclose the information about his previous employment with CBRE. *See* Powell Dep., Doc. 49, Ex. T, PageID 471; Powell Dep., Doc. 49, 107:7–13. Nor did Powell, when given the opportunity to do so with his future employment with CBRE hanging on the line and his potential for receiving a one-time $600,000 signing incentive, make any attempt to explain the reasons behind the omission. Powell Dep., Doc. 49, 107:7–13.

Under the circumstances, CBRE's refusal to pay the signing incentive during the onboarding process was justified, especially given the language of the agreement which made Powell's "*continued* employment . . . contingent upon satisfactory results of a background check." Def. Ex. A, Doc. 58, PageID 926 (emphasis added). At best, Powell's receipt of the Offer Letter and his accepting of the senior sales manager position allowed him to become a conditional employee who could be fired for cause and required to immediately repay the $600,000 signing incentive under the terms of the parties' contract. *See* Def. Ex. C, Doc. 58, PageID 937. Thus, Powell cannot establish a genuine issue of material fact regarding his entitlement to the signing incentive. *See*, *e.g., Ronan*, 2010-Ohio-5072, ¶ 19 (stating that an employee who was only conditionally employed "pending the results of his background check" and when the background checks indicated that "[he] failed to meet the . . . requirement, [the employee] was unable to meet the condition precedent that would have triggered [his employer's] obligation to perform the contract").

Finally, because the Court has found CBRE's motion for summary judgment (Doc. 58) to be meritorious and in so doing, has addressed many of the arguments presented in Powell's motion for summary judgment (Doc. 57), it need not further discuss them here. Suffice it to say, that the Court has thoroughly considered all Powell's arguments asserted in his summary judgment motion (Doc. 57) and found them to be without merit.

## V. CONCLUSION

For the reasons stated, the Court **DENIES** the Motion for Summary Judgment of Plaintiff Dedric Powell (Doc. 57), **GRANTS** the Motion for Summary Judgment of Defendant CBRE (Doc. 58), and **DISMISSES** Plaintiff Dedric Powell's Complaint (Compl.,

Doc. 2) **WITH PREJUDICE**. The Court **ORDERS** the clerk to **ENTER JUDGMENT** and **TERMINATE** this matter from the docket.

**IT IS SO ORDERED.**

July 28, 2026

Jeffery P. Hopkins
United States District Judge